FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN -8  PM 4: 33

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARLOS McGREW** | **CIVIL ACTION** |
| **VERSUS** | **NO.  05-0383** |
| **N. BURL CAIN, WARDEN** | **SECTION "K"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  28 U.S.C. § 2254(e)(2)(B).



the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED**

**WITH PREJUDICE** as time-barred.  Alternatively, the petition may be dismissed

without prejudice for failure to exhaust state court remedies.

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Carlos McGrew, is incarcerated in the Louisiana State Penitentiary

in Angola, Louisiana.[2]  On December 3, 1998, McGrew and a co-defendant, William B.

Chattman a/k/a Terry Williams, were indicted in Jefferson Parish on two counts of first

degree murder.[3]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of

the case as follows in relevant part:

> On September 24, 1998, at 11:43 p.m., Dale Frank Savoy (Savoy) and
> Kevin Dermody (Dermody) were each shot twice in the head at close range
> outside of a discount store in a strip shopping mall in Jefferson Parish
> approximately 20 feet from an E-Z Serve store.  The mall is located on the corner
> of Bannerwood Street and Lapalco Boulevard.
> 
>           \* \* \*
> 
> Danny Rees (Rees) testified that he was employed at a pawn shop located
> approximately one block from the strip shopping mall where the homicides
> occurred.  On the day of the incident, between 11:00 a.m. and 3:00 p.m.,
> Defendant, one of his regular customers, and William B. Chattman (Chattman),
> whom he also knew, entered the pawn shop to purchase .38 caliber ammunition.
> The two men were acting "erratic" and "so out of the ordinary" that Rees told
> them that he did not have the ammunition, that he had placed an order, and that
> they should return in a few days.  Defendant and Chattman persisted claiming that
> they needed it for that night.  They asked him to either sell or to give them some
> of his personal ammunition.  Chattman did most of the talking, but Defendant also
> asked for the ammunition.  Rees stated that he told the police that there was

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 1 of 14, Indictment, 12/3/98 (amended 1/18/00); Grand Jury Return, 12/3/98.

another man accompanying the two men. He thought the other man was Dalton Batiste (Batiste).

*   *   *

Batiste testified that on the day of the homicides, he saw Defendant and Chattman at his apartment complex between 10:30 p.m. to 11:00 p.m. The two were walking and told him that they were trying to get home to Oakdale Subdivision. At that time Chattman lived at 505 Bannerwood Street and Defendant, Batiste believed, lived at 404 Melbrook Drive. Batiste testified that he did not give Defendant and Chattman a ride. According to Batiste, Defendant was carrying a .38 caliber weapon and Chattman a .45 caliber weapon.

The police questioned Batiste regarding his whereabouts at the time of the homicides. However, they did not believe that he was a suspect. Batiste testified that in October of 1998 when he spoke to the police, he had not been arrested nor had any charges pending against him.

Keymba Williamson (K. Williamson) and Rossi Thomas (Thomas) testified that around 11:00 p.m. on the night of the homicides, they saw Defendant and Chattman walking toward the E-Z Serve store on Bannerwood Street. Thomas estimated that it was between 11:00 p.m. and 11:45 p.m. K. Williamson testified that Defendant and Chattman were walking in the same direction as she was driving. She stated that, although it was dark, there was sufficient lighting and that she had no problems seeing either Defendant or Chattman. She also testified that they were not friends, but she recognized both men from the neighborhood.

*   *   *

After driving passed (sic) Defendant and Chattman, K. Williamson and Thomas went to the E-Z Serve store on the corner of Lapalco Boulevard and Bannerwood Street and neither saw either Defendant or Chattman at the E-Z Serve store.

*   *   *

K. Williamson testified that when she entered the E-Z Serve store, the only other people in the store, other than her girlfriends, were Savoy, Dermody and the clerk and that she and her friends remained inside approximately 10 to 20 minutes. Both K. Williamson and Thomas testified that both Savory and Dermody were in the store approximately the same period of time. According to K. Williamson, after checking out, Savoy and Dermody headed in the direction of Reality Drive, at the end of the shopping area.

After leaving the E-Z Serve store, the women went to Taco Bell. Neither K. Williamson nor Thomas saw either Chattman or Defendant on Lapalco Boulevard. After leaving Taco Bell they saw ambulances and police as they approached the E-Z Serve store. They stopped, exited the vehicle, and saw Savoy and Dermody lying in a pool of blood in front of the discount store near the E-Z Serve store.

3

Jodee Bergquist (Bergquist), a technician employed at a veterinary clinic on the corner of Bannerwood Street and Lapalco Boulevard, testified that the E-Z Serve store is adjacent to the veterinary clinic, both businesses within the strip shopping mall.

\* \* \*

Bergquist and Dr. Williams, the veterinarian, heard a "pop," which sounded like gunfire. They went to the front door of the clinic but did not see anything in the parking lot except their two cars and a truck parked in front of the EZ Serve store. Bergquist and Dr. Williams returned to the interior of the clinic and heard three more "pops." They assumed that the EZ Serve store had been robbed. They saw a male exit the EZ Serve store, heading away from Bannerwood Street toward the discount store, approximately 20 feet from the clinic. A wall separates the buildings and restricts the view from the clinic to the discount store. Dr. Williams followed the man while Bergquist called 911. She then assisted Dr. Williams in attending to Savoy and Dermody. She identified the two victims as the two young men with whom she had spoken moments before the shooting.

\* \* \*

Sidney Williamson (S. Williamson), K. Williamson's brother, testified that at the time of the homicides he was visiting his mother at 348 Timberwood Drive. There is street lighting on Timberwood Drive. S. Williamson testified that he saw two men running away from Lapalco Boulevard about 11:00 p.m. or midnight on the night of the homicides. He thought that he recognized one of the individuals as Defendant, whom he had previously seen in the neighborhood. He did not know the identity of the other individual. S. Williamson testified that the only thing he could remember was that the two men were not wearing shirts. The police questioned S. Williamson the following day. The first time he spoke to the police, he did not give them any name. The second time he spoke to the police, he gave them Defendant's name. He told the police that it looked like the Defendant, but he was uncertain.

On the way home from his mother's house on the night of the homicides, S. Williamson passed the E-Z Serve store and saw the two victims lying on the ground. He saw his sister drive up to the E-Z Serve store. S. Williamson told his sister that he saw two people running and that he thought one of them looked like the Defendant. Previously at a pre-trial motion hearing, S. Williamson testified that he did not recognize the two runners. He explained that he must have misunderstood the question because he saw a person who looked like the Defendant, but that he did not know for certain that it was him.

On cross-examination, S. Williamson testified that the police would not let him leave after he told them that he could not identify the two runners. He felt that he had to identify someone in response to the officers presenting a photographic lineup to him and that he would not be allowed to leave until he told

4

the police what they wanted to hear. On redirect examination, S. Williamson testified that the police had him listen to his sister's audiotape recorded statement in which she said that he said he saw the Defendant's face. He explained that he did not tell this to his sister, but instead told her that he thought it was the Defendant.

* * *

State v. McGrew, 769 So.2d 782, 783-787 (La. App. 5th Cir. 2000); State Record

Volume 6 of 14, Fifth Circuit Opinion, 00-KA-200, p. 2-10, September 26, 2000.

McGrew was tried separately from his co-defendant[4] on August 9 through 14,

1999 and was found guilty of two counts of second degree murder.[5] At a hearing held

August 18, 1999, the state trial court denied McGrew's motion for judgment of acquittal

and, after waiver of legal delays, sentenced him to consecutive life sentences on each

count without benefit of parole, probation or suspension of sentence.[6] On September 18,

1999, McGrew's counsel filed a motion to reconsider the sentence which the trial court

denied without reasons on September 28, 1999.[7]

---

[4]Chattman's motion to sever was granted by the trial court. St. Rec. Vol. 1 of 14, Motion to Sever (Chattman), 3/9/99; Minute Entry, 3/10/99.

[5]St. Rec. Vol. 2 of 14, Trial Minutes (3 pages), 8/9/99; Trial Minutes (4 pages), 8/10/99; St. Rec. Vol. 3 of 14, Trial Minutes (2 pages), 8/11/99; Trial Minutes (2 pages), 8/12/99; Trial Minutes (2 pages), 8/13/99; Trial Minutes, 8/14/99; St. Rec. Vol. 12 of 14, Trial Transcript, 8/9/99; Trial Transcript, 8/10/99; Trial Transcript, 8/11/99; St. Rec. Vol. 13 of 14, Trial Transcript (continued), 8/11/99; Trial Transcript, 8/12/99; St. Rec. Vol. 14 of 14, Trial Transcript, 8/13/99; Trial Transcript, 8/14/99;St. Rec. Vol. 3 of 14, Verdict Count 1, 8/14/99; Verdict Count 2, 8/14/99.

[6]St. Rec. Vol. 3 of 14, Sentencing Minutes, 8/18/99; Motion for Judgment of Acquittal, 8/18/99.

[7]St. Rec. Vol. 3 of 14, Motion to Reconsider Sentence, 9/18/99 (order on second page).

On direct appeal, McGrew's counsel challenged the sufficiency of the evidence to support the conviction for second degree murder.[8]  On September 26, 2000, the Louisiana Fifth Circuit affirmed McGrew's conviction and directed the trial court to notify McGrew of the applicable post-conviction deadlines.[9]

Thereafter, on October 16, 2000, McGrew filed a pro se a writ application in the Louisiana Supreme Court challenging the sufficiency of the evidence at trial.[10]  He later supplemented the application with the following additional claims:[11] (1) His arrest was illegal. (2) The state trial court erred in denying his motion to suppress. (3) The state trial court erred in denying his motion to quash. (3) He was denied due process and equal protection in the pretrial arraignment proceedings. (4) He received ineffective assistance of counsel because his lawyer failed to seek writs after denial of the motion to suppress, failed to file a motion to quash the indictment based on the pretrial proceedings and failed to object to improper trial procedure.

---

[8]St. Rec. Vol. 14 of 14, Appeal Brief, 00-KA-0200, 3/20/00; State v. McGrew, 769 So.2d at 788; St. Rec. Vol. 6 of 14, 5th Cir. Opinion, p. 12, 00-KA-200, 9/26/00.

[9]State v. McGrew, 769 So.2d at 791; St. Rec. Vol. 6 of 14, 5th Cir. Opinion, 00-KA-200, p. 18, 9/26/00.

[10]St. Rec. Vol. 9 of 14, La. S. Ct. Writ Application, 00-KO-2852, 10/16/00; Supplemental Writ Application, 00-KO-2852, 12/12/00; Supplemental Writ Application, 00-KO-2852, 5/17/01.

[11]St. Rec. Vol. 9 of 14, Supplemental Writ Application, 00-KO-2852, 2/15/01.

The Louisiana Supreme Court denied the application without reasons on October

12, 2001.[12] McGrew's conviction became final 90 days later, January 10, 2002, when

he did not file a writ application in the United States Supreme Court. Ott v. Johnson, 192

F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States

Supreme Court is considered in the finality determination under 28 U.S.C. §

2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. S. Ct. Rule 13(1).

McGrew filed a request for reconsideration of the Louisiana Supreme Court's

ruling on November 6, 2001.[13] As discussed below, that request was untimely. The

court denied the request without reasons on January 4, 2002.[14]

Eleven months later, on December 3, 2002, McGrew filed a motion to correct his

sentence on grounds that his indictment was invalid because of an unconstitutional and

prejudicial grand jury selection process.[15] The state trial court denied the motion, finding

---

[12]State v. McGrew, 799 So.2d 492 (La. 2001); St. Rec. Vol. 5 of 14, La. S. Ct. Order, 2000-KO-2852, 10/12/01.

[13]St. Rec. Vol. 9 of 14, Petition for Rehearing, 00-KO-2852, 11/6/01.

[14]State v. McGrew, 805 So.2d 1196 (La. 2002); St. Rec. Vol. 5 of 14, La. S. Ct. Order, 00-KO-2852, 1/4/02.

[15]St. Rec. Vol. 7 of 14, Motion to Correct an Illegal Sentence, 12/3/02. The record reflects that McGrew submitted a motion to recuse the trial court judge along with this motion. When the trial court failed to address the motion, McGrew filed a writ of mandamus in the Louisiana Fifth Circuit. St. Rec. Vol. 7 of 14, 5th Cir. Order, 03-KH-804, 7/22/03 (the writ filing date of July 7, 2003 appears on the face of this order). The writ application was denied on the representation that no motion to recuse was filed. Id.

that the challenge to the indictment was procedurally defaulted for failure to file a pretrial motion to quash.[16]

Six months later, on May 29, 2003, McGrew filed another motion to correct his sentence on the same ground that his sentence was improper because it was derived from a tainted indictment issued by an unconstitutionally empaneled grand jury.[17] The state trial court denied the motion on June 3, 2003, as repetitive.[18]

Two weeks later, on June 17, 2003, McGrew submitted a letter in the form of an order to schedule a hearing on a motion to quash.[19] The trial court construed the letter as a motion to quash and denied it as baseless on July 8, 2003.[20]

On August 13, 2003, McGrew filed a state court application for post-conviction relief asserting the following grounds for relief:[21] (1) The trial court lacked subject matter jurisdiction when the prosecution was instituted by means of an unconstitutionally composed grand jury resulting in an invalid indictment. (2) He received ineffective assistance of counsel when his attorney failed to preserve the grand jury challenge.

---

[16]St. Rec. Vol. 7 of 14, Trial Court Order, 12/5/02.

[17]St. Rec. Vol. 7 of 14, Motion to Correct an Illegal Sentence, 5/29/03.

[18]St. Rec. Vol. 7 of 14, Trial Court Order, 6/3/03.

[19]St. Rec. Vol. 7 of 14, Motion to Quash, 6/17/03.

[20]St. Rec. Vol. 7 of 14, Trial Court Order, 7/8/03.

[21]St. Rec. Vol. 7 of 14, Uniform Application for Post Conviction Relief, 8/13/03.

(3) He was seized without probable cause for his arrest. (4) Counsel failed to investigate and present an alibi defense. (5) He is actually and factually innocent because there was no evidence presented to identify him as the shooter.

The state trial court denied the application on August 22, 2003, finding that the challenge to the indictment/grand jury composition was procedurally defaulted and meritless, rendering the lack of subject matter jurisdiction and related ineffective assistance of counsel claims meritless.[22] The court further held that the illegal arrest claim was procedurally defaulted because it was not timely raised. The court also determined that the ineffective assistance of counsel claim related to an alibi defense was without merit. Finally, the court held that McGrew's claims of actual and factual innocence were legally insufficient to undermine his conviction and therefore meritless.

McGrew filed a timely[23] writ application in the Louisiana Fifth Circuit on October 15, 2003.[24] The court denied the application the next day finding no error in the trial

---

[22]St. Rec. Vol. 7 of 14, Trial Court Order, 8/22/03.

[23]Upon his motion, McGrew was granted two extensions by the trial court to file his writ application. St. Rec. Vol. 7 of 14, Notice to Seek Supervisory Writs to the 5th Circuit Court of Appeal, 9/17/03; Trial Court Order, 9/23/03 (extension of time to 10/2/03); Request for Extension of a Return Date, 10/7/03; Trial Court Order, 10/14/03 (extension of 15 days from order).

[24]St. Rec. Vol. 7 of 14, 5th Cir. Order, 03-KH-1204, 10/16/03 (writ filed 10/15/03). The record does not contain a copy of this writ application. The date appears on the face of the appellate court's order and has been confirmed by my staff with the clerk of the Louisiana Fifth Circuit.

court's ruling of August 22, 2003.[25]  The court also denied McGrew's application for rehearing on October 29, 2003.[26]

On December 3, 2003, McGrew filed an untimely[27] writ application in the Louisiana Supreme Court seeking further review of the following claims:[28] (1) The trial court denied the application without requiring an answer from the district attorney. (2) The alleged waiver of the grand jury issue was unconstitutional because it was not knowing and voluntary. (3) The trial court failed to hold an evidentiary hearing before denying the ineffective assistance of counsel claims. (4) No hearing was held to determine the validity of the alibi defense. (5) The actual innocence claims were denied without a hearing.

McGrew also filed a supplemental application in which he requested that the court determine the validity of the Louisiana laws on grand jury selection at the time of his

---

[25]St. Rec. Vol. 7 of 14, 5th Cir. Order, 03-KH-1204, 10/16/03.

[26]St. Rec. Vol. 7 of 14, 5th Cir. Order, 03-KH-1262, 10/29/03.

[27]La. Code Crim. P. art. 922(C); La. S. Ct. R. X§5(a).

[28]St. Rec. Vol. 9 of 14, La. S. Ct. Writ Application, 03-KH-3281, 12/3/03; St. Rec. Vol. 7 of 14, La. S. Ct. Letter, 2003-KH-3281, 12/3/03.

indictment and prior to amendment of the article in 1999.[29]  The Louisiana Supreme Court denied the application without reasons on January 7, 2005.[30]

## II.   FEDERAL HABEAS PETITION

On February 16, 2005, McGrew filed a petition for federal habeas corpus relief seeking relief on the following grounds:[31]  (1)(a) He was denied due process and equal protection because of discriminatory selection of the grand jury foreperson, (b) the trial court's decision that the claim was waived is contrary to federal law, (c) the trial court failed to rule upon the motion for subpoena duces tecum, (d) the trial court failed to hold an evidentiary hearing to resolve the equal protection issue, (e) he received ineffective assistance of counsel when his lawyer failed to preserve the challenge to the defective indictment issued by the unconstitutionally empaneled grand jury. (2) He was denied a fair trial where (a) counsel failed to investigate and call an alibi witness, (b) the trial court failed to grant an evidentiary hearing on the subpoena for the alibi witness, (c) the trial court erred in finding that counsel's decision not to call the alibi witness was trial strategy and therefore not ineffective. (3)(a) The evidence was insufficient to support the conviction and (b) he is actually and factually innocent.

---

[29]St. Rec. Vol. 9 of 14, Supplemental Writ Application, 03-KH-3281, 5/26/04.

[30]State ex rel. McGrew v. State, 891 So.2d 672 (La. 2005).

[31]Rec. Doc. No. 2, Petition and Memorandum in Support.

11

The State responded to McGrew's federal petition by alleging that the petition is not timely and that McGrew failed to exhaust state court remedies as to some of the claims.[32]  The State also argues that McGrew's challenges to the grand jury selection process and validity of the indictment are procedurally barred from federal review in light of the state court's dismissal of the claims on procedural grounds.

McGrew filed a response to the State's opposition in which he argues that his petition is timely because he was not notified by the Louisiana Supreme Court of the denial of his petition for reconsideration until June 10, 2003, which was 15 months after the ruling on January 4, 2002, and he is therefore entitled to equitable tolling.  He further contends that he should not be penalized for his failure to exhaust all state court remedies because he used the avenues he thought were available to him.  He argues that his claims were raised in his original post-conviction application to the state trial court and were therefore also before the other state courts.  McGrew also suggests that his challenges to the grand jury selection process and indictment are not procedurally barred because the alleged waiver of the claims was not constitutional.

III.   STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[32]Rec. Doc. No. 8.

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[33] and

applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore

applies to McGrew's petition, which, for reasons discussed below, is deemed filed in this

court on January 19, 2005.[34]

The threshold questions in habeas review under the amended statute are whether

the petition is timely and whether the claims raised by the petitioner were adjudicated on

the merits in state court; i.e., the petitioner must have exhausted state court remedies and

must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20

(5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

For the following reasons, I find that McGrew has not exhausted his state court

remedies with respect to several of his claims, but that his petition is not timely filed

under the AEDPA and must be dismissed with prejudice for that reason.

---

[33]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed McGrew's petition on February 16, 2005. McGrew, however, signed the petition on January 19, 2005, which is the earliest date he could have submitted it to prison officials for mailing.

IV.   <u>EXHAUSTION OF STATE COURT REMEDIES</u>

McGrew has failed to present several of his claims to the Louisiana Supreme Court and therefore has not exhausted state court remedies.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." <u>Whitehead v. Johnson</u>, 157 F.3d 384, 387 (5th Cir. 1998) (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 519-20 (1982)); <u>accord</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973); <u>Nobles</u>, 127 F.3d at 419.   "A federal habeas petition should be dismissed if state remedies have not been exhausted as to <u>all</u> of the federal court claims." <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); <u>Rose</u>, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the <u>highest</u> state court." <u>Id.</u> (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-78 (1971)) (emphasis added).   "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. <u>O'Sullivan</u>, 526 U.S. at 845; <u>accord</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78).  "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." Id. (citing Nobles, 127 F.3d at 420).

Thus, to exhaust his claims in state court, McGrew must fairly present the same claims he urges in this federal court to the Louisiana Supreme Court.  Contrary to his arguments, it is not enough for him to have raised them in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court.  Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

McGrew presented numerous claims in his two writ applications to the Louisiana Supreme Court, as detailed above.  However, he now raises four claims in his federal petition that were not raised in either of his supreme court writ applications.  The unexhausted claims are: (1) The trial court failed to rule upon the motion for subpoena duces tecum. (2) He received ineffective assistance of counsel when his lawyer failed to preserve the challenge to the defective indictment issued by an unconstitutionally

15

empaneled grand jury.[35] (3) He was denied a fair trial where counsel failed to investigate and call an alibi witness. (4) The trial court erred in finding that counsel's decision not to call the alibi witness was trial strategy and therefore not ineffective assistance.

Because McGrew presents new legal theories and factual claims in this federal application that were <u>not</u> brought to the Louisiana Supreme Court, he has failed to exhaust available state court remedies as to the claims set forth above. <u>Whitehead</u>, 157 F.3d at 387 (citing <u>Nobles</u>, 127 F.3d at 420). His petition could be dismissed without prejudice to allow him to complete exhaustion of this mixed petition. <u>Pliler v. Ford</u>, 124 S. Ct. 2441, 2447 (2004) (quoting <u>Rose v. Lundy</u>, 455 U.S. 509, 510 (1982)); <u>Whitehead</u>, 157 F.3d at 387. However, because McGrew's federal petition is time-barred under the AEDPA and must be dismissed with prejudice for that reason, it is unnecessary to require state court exhaustion or to address the procedural default defense asserted by the State.

IV.     <u>STATUTE OF LIMITATIONS</u>

Section 2244(d)(1) of the federal habeas statute requires that a petitioner bring his Section 2254 claims, among other things not relevant here, within one year from the date

---

[35]In his first writ application, McGrew alleged that counsel was ineffective for failing to preserve the challenge to (file a motion to quash) the indictment. However, this claim was based on the indictment as a result of his alleged false arrest and the wrongful admission of evidence that should have been suppressed. The claim was not at that time based on the alleged discriminatory selection of the grand jury foreperson. The claim is therefore based on a different legal theory than the claim presented to the Louisiana Supreme Court in the 2000 writ application.

of finality of the judgment of conviction.[36]  McGrew's conviction became final on

January 10, 2002, which was 90 days after the Louisiana Supreme Court denied his 2000

writ application after his direct appeal.  Ott, 192 F.3d at 513.

I have not included McGrew's untimely and improper petition for rehearing in the

finality calculation.  As outlined above, McGrew filed an improper and otherwise

untimely request for rehearing in the Louisiana Supreme Court on November 6, 2001.

The petition for rehearing was procedurally improper under La. S. Ct. Rule IX§6, which

provides in relevant part that "[a]n application for rehearing will not be considered when

the court has merely granted or denied an application for a writ of certiorari or a remedial

or other supervisory writ."  Under this rule, McGrew had no right to seek rehearing in

---

[36]Specifically, Section 2244(d) provides:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas
corpus by a person in custody pursuant to the judgment of a State court.  The limitation
period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of
direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by
State action in violation of the Constitution or laws of the United States
is removed, if the movant was prevented from filing by such State
action;

(C) the date on which the constitutional right asserted was initially
recognized by the Supreme Court, if the right has been newly recognized
by the Supreme Court and made retroactively applicable to cases on
collateral review; or

(D) the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due
diligence.

(2)  The time during which a properly filed application for State post-conviction or other
collateral review with respect to the pertinent judgment or claim is pending shall not be
counted toward any period of limitation under this section.

the Louisiana Supreme Court because the court "merely denied" his 2000 writ application.

Even if McGrew could seek rehearing, his petition filed on November 6, 2001, was untimely. Louisiana law requires that a motion for rehearing, where one is allowed, must be filed within 14 days of issuance of the underlying order. La. S. Ct. Rule IX§1; La. Code Crim. P. art. 922. McGrew's petition for rehearing was filed 25 days after the Louisiana Supreme denied his writ application on October 12, 2001.

Thus, the finality of McGrew's conviction is determined by the last <u>timely</u> step taken in the state appeal process, <u>see</u> <u>Roberts v. Cockrell</u>, 319 F.3d 690 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process), in addition to the 90 days allowed under federal law pursuant to <u>Ott</u>. For these reasons, McGrew's conviction became final on January 10, 2002, which was 90 days after the Louisiana Supreme Court denied his writ application and he did not file for writ of certiorari in the United States Supreme Court. Nevertheless, as discussed below, even if this court were to consider McGrew's conviction to be final 90 days after denial of his untimely petition for rehearing, McGrew's federal habeas corpus petition would still be time-barred.

Using January 10, 2002 as McGrew's finality date, literal application of the statute would bar his Section 2254 petition as of January 10, 2003. As discussed at footnote 34

above, under the federal mailbox rule, his federal petition is deemed filed on January 19, 2005, which was two years after the deadline imposed by the AEDPA, and it must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year period of limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and there exists rare or extraordinary circumstances which prevented timely filing. Pace v. DiGuglielmo, 125 S.Ct. 1807, 1814 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis, 158 F.3d at 810. Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 125 S. Ct. at 1814-15; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

McGrew alleges that he should be granted tolling for the 15 months he waited to receive a copy of the Louisiana Supreme Court's denial of his motion for rehearing filed November 6, 2001. He claims to have received the copy on or after June 10, 2003, as he attempts to demonstrate by submitting the mail receipts from the prison attached to his petition.

19

As discussed above, McGrew was not entitled to rehearing under La. S. Ct. Rule IX§6 and was wrong in relying on such pleading.  In addition, delay in receiving notice of a court's decision does not entitle a federal habeas petitioner to statutory tolling, a topic discussed below.  Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000); Nelms v. Johnson, 51 Fed. Appx. 482, 2002 WL 31319277 (5th Cir. Sep. 30, 2002).  Therefore, the delay will only be considered in the context of equitable tolling, to which McGrew is not entitled for the following reasons.

Accepting as true for present purposes only McGrew's assertions (and supporting documents)[37] that he did not receive a copy of the Louisiana Supreme Court's January 4, 2002 order until June 10, 2003, he has failed to demonstrate that he was prejudiced in any way by the delay or that a rare or extraordinary circumstance rendered his federal filing untimely.  In fact, the record demonstrates that McGrew continued to pursue relief in the state courts during the waiting period, from January 4, 2002 and June 10, 2003.

Beginning in February 2002, McGrew filed numerous requests to recover documents and pleadings from the state trial court and district attorney in order to pursue his post-conviction claims.[38]  Although he was mostly unsuccessful in his efforts to

---

[37]McGrew attached copies of certain mail receipts which he claims correlate with his efforts to obtain the status and a copy of the Louisiana Supreme Court's ruling on his untimely petition for rehearing.

[38]St. Rec. Vol. 6 of 14, Motion for Production of Documents, 2/1/01; Motion for Reconsideration of Motion for Production filed May 6, 2002, 6/10/02.

gather documents,[39] this did not deter him from filing for <u>substantive post-conviction relief</u> in the trial court during the alleged delay period.

As outlined above, on December 3, 2002, McGrew filed an unsuccessful motion seeking to correct an illegal sentence based on the allegedly unconstitutionally empaneled grand jury.[40] He filed a second motion to correct an illegal sentence on May 29, 2003, which incorporated a motion to quash and motions to recuse the judge and prosecutor, again based on the allegedly unconstitutional grand jury selection process. He also urged the court to consider his motion timely because the claims alleged a jurisdictional defect in his criminal proceedings.

As part of his timeliness argument, McGrew stated that his motion to correct was not subject to the time restrictions placed on applications for post-conviction relief. McGrew therefore was aware, or at least concerned, in May 2003 that he was facing time limitation restrictions in pursuing his post-conviction relief. The motion was ultimately denied by the state trial court as repetitive.[41]

―――――――――――

[39]St. Rec. Vol. 6 of 14, Trial Court Order, 2/9/01; Trial Court Order, 5/28/02; Trial Court Order, June 13, 2002.

[40]St. Rec. Vol. 7 of 14, Motion to Correct an Illegal Sentence, 12/3/02; Trial Court Order, 12/5/02.

[41]St. Rec. Vol. 7 of 14, Trial Court Order, 6/3/03.

Later, on June 17, 2003, McGrew submitted a motion to quash the indictment in an apparent effort to revive his grand jury challenge.[42] More than one month after this motion was denied, McGrew finally filed a uniform application for post-conviction relief in the state trial court.[43]

Even assuming that McGrew did not timely receive a copy of the Louisiana Supreme Court ruling, the record does not demonstrate that McGrew was misled by that delay to believe that he could not file for post-conviction relief and the alleged delay did not prevent him from pursuing state post-conviction relief.

McGrew therefore has failed to demonstrate that any delay in receiving a copy of the Louisiana Supreme Court order caused his untimeliness in this federal court or that it prevented him from seeking relief in the state courts to toll his federal limitations period. He has offered no rare or extraordinary circumstance in this instance sufficient to warrant equitable tolling. Fisher, 174 F.3d at 715 (refusing to consider a judicial tolling rule based on delayed information because it is not rare or extraordinary and "the same concept would apply equally to many other prisoners and in different variations of delayed information.")

---

[42]St. Rec. Vol. 7 of 14, Motion to Quash, 6/17/03.

[43]St. Rec. Vol. 7 of 14, Trial Court Order, 7/8/03; Uniform Application for Post Conviction Relief, 8/13/03.

22

Furthermore, the Fifth Circuit has held that the AEDPA does not provide for an exception to its limitations period for claims of actual innocence. Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir. 2002) (citing Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000)). While McGrew uses the phrase "actually innocent" in his petition, no showing of it has been made and his claims are not new or different from those raised in his sufficiency of the evidence claim raised in the state courts. His claim of actual innocence alone is not sufficient to toll the limitations period merely because the petitioner believes he is entitled to relief. See United States v. Alexander, 2000 WL 1092618 at *3 (E.D. La. Aug. 2, 2000) (Barbier, J.); Gaines v. Cockrell, 2003 WL 222444 (N.D. Tex. Jan. 28, 2003) (citing Melancon v. Kaylo, 259 F.3d 401, 408 (5th Cir. 2001)).

McGrew has not asserted any other reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions. See United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he

was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.  Pace, 125 S. Ct. at 1812 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

Thus, as outlined above, the one-year AEDPA limitations period began to run in McGrew's case on January 11, 2002, the day after his conviction became final. For the reasons set forth above, McGrew's untimely petition for rehearing filed November 6, 2001, has no effect on this finality determination. He also is not entitled to statutory tolling for the untimely writ application since La. S. Ct. Rule IX§1 offers no extensions to its time limits. Williams, 217 F.3d at 309-11 (La. S. Ct. Rule X has no exceptions to its time limits); see Pace, 125 S. Ct. at 1812. Under federal habeas corpus law, a state mailbox rule would not be considered or applied to change this conclusion. Coleman,

184 F.3d at 402; <u>Lookingbill v. Cockrell</u>, 293 F.3d 256, 262 (5th Cir. 2002) (state mailbox rule not applied because federal law determines the time limits under the AEDPA.); <u>Richardson v. Dretke</u>, 85 Fed. Appx. 394, 395 (5th Cir. 2004); <u>Kestler v. Cockrell</u>, 73 Fed. Appx. 690, 691 (5th Cir. 2003).

Therefore, McGrew's federal limitations period ran uninterrupted from January 11, 2002, for 326 days, until December 3, 2002, when he filed his first motion to correct an illegal sentence in the state trial court. The AEDPA limitations period remained tolled until January 5, 2003, which was 30 days after the state trial court denied the motion and McGrew sought no further review.

The one-year AEDPA statute of limitations began to run again on January 6, 2003, and did so for the remaining 39 days until it expired on February 13, 2003. McGrew had <u>no</u> properly filed state post-conviction or other collateral review proceedings pending during that period.

As mentioned above, the same conclusion is true even if the court were to consider McGrew's untimely November 6, 2001 Louisiana Supreme Court petition for rehearing in the finality of conviction calculation. Under this alternative calculation, McGrew's conviction would have become final on April 4, 2002, which would have been 90 days after denial of his petition for rehearing on January 4, 2002.

27

The one-year federal statute of limitations period would have begun to run on April 5, 2002 for 242 days, until December 3, 2002, when McGrew filed his first motion to correct an illegal sentence. The motion remained pending until January 5, 2003 when he did not seek further review. The federal tolling period would have begun to run again on January 6, 2003 for an additional 123 days until May 8, 2003, when it would have expired. Thus, even under this alternative scenario, McGrew's federal petition is untimely filed.

McGrew's federal habeas corpus petition is deemed filed on January 19, 2005, which was 23 months, or alternatively 20 months, after the expiration of the one-year limitations period allowed under the AEDPA. Thus, McGrew's petition must be dismissed as untimely under 28 U.S.C. § 2244(d)(1)(A).

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the petition of Carlos McGrew for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred under the AEDPA.

In the alternative, and only if my recommendation concerning the AEDPA limitations period is not accepted, **IT IS RECOMMENDED** that the petition of Carlos McGrew be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____ day of June, 2005.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE